LAWRENCE M. HADLEY - State Bar No. 157728
lhadley@glaserweil.com
THOMAS P. BURKE JR. - State Bar No. 288261
tburke@glaserweil.com
GLASER WEIL FINK HOWARD
  AVCHEN & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone:  (310) 553-3000
Facsimile:   (310) 556-2920

ALEX E. JONES – *Pro hac vice* forthcoming
aej@kjk.com
KOHRMAN JACKSON & KRANTZ LLP
One Cleveland Center
1375 East Ninth Street, 29th Floor
Cleveland, Ohio 44114
Telephone:  (216) 736-7241
Facsimile:   (216) 621-6536

Attorneys for Plaintiff
Josie Maran Cosmetics, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JOSIE MARAN COSMETICS, LLC,<br><br>             Plaintiff,<br><br>v.<br><br>MORNING BEAUTY,<br><br>             Defendants. | CASE NO.:<br><br>**PLAINTIFF JOSIE MARAN COSMETICS, LLC'S COMPLAINT FOR:**<br><br>**1. TRADEMARK INFRINGEMENT;**<br>**2. UNFAIR COMPETITION;**<br>**3. TRADEMARK DILUTION**<br>**4. VIOLATIONS OF CAL. BUS. & PROF. CODE §§ 17200 *ET SEQ*.;**<br>**5. DECLARATORY JUDGMENT / INJUNCTIVE RELIEF;**<br>**6. VIOLATION OF CAL. BUS. & PROF. CODE § 14250;**<br>**7. VIOLATION OF CAL. BUS. & PROF. CODE § 14247**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Josie Maran Cosmetics, LLC ("***Plaintiff***") by and through counsel, and for its Complaint against Morning Beauty ("***Defendant***"), states as follows:

## INTRODUCTION

1. Defendant is engaged in the unauthorized sale of products, and is infringing upon the intellectual property rights of, Plaintiff. These unauthorized sales and infringing activities are illegal, have harmed, and will continue to harm Plaintiff.

## PARTIES

2. Plaintiff is a limited liability company, organized under the laws of the State of California.

3. Plaintiff is a manufacturer and retailer of a variety of high-end cosmetic products (collectively, the "***Products***").

4. Defendant is selling the Products without Plaintiff's authorization or consent and in violation of Plaintiff's rights.

## JURISDICTION

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1338, as Plaintiff's claims are based on 15 U.S.C. § 1115 and 15 U.S.C. §1125(a)

6. This Court has personal jurisdiction over Defendant because Defendant has shipped, sold and marketed the Products in California, in a manner that has harmed Plaintiff and violated its intellectual property rights.

7. Defendant is subject to the Court's jurisdiction pursuant to Cal. Code Civ. Proc. § 410.10, as exercising such jurisdiction is not inconsistent with the Constitution of California or the United States.

8. Defendant has sufficient minimum contacts with the State of California with respect to the subject matter of this action to satisfy Constitutional due process. As a result of Defendant's business activities directed to the state of California, Defendant could reasonably anticipate being brought into court in this forum.

9. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

## BACKGROUND

### *Plaintiff's Business*

10. Plaintiff sells the Products bearing various trademarks including: JOSIE MARAN (Reg. No. 4007094), PURE ARGAN MILK (Reg. No. 4577258), ARGAN RESERVE (Reg. No. 5197249), and ARGAN MATCHMAKER (Reg. No. 4513257) (together, the "***Trademarks***"). Plaintiff also registered for the trademark PURE ARGAN MILK in California (the "***California Trademark***").

11. Plaintiff has spent considerable resources to develop, market and protect its Trademarks.

12. Plaintiff sells the Products on its website and on third-party e-commerce websites like Amazon.

13. Plaintiff also sells to wholesalers and authorized resellers (each, a "***Reseller***" and together, "***Resellers***") that sell the Products in accordance with Plaintiff's Resale Policy (the "***Resale Policy***"). The Resale Policy is attached as Exhibit A.

14. Plaintiff uses the Resale Policy in order to promote fair competition between Resellers and to protect its brand, its goodwill, and its valuable intellectual property, including its proprietary images, designs, and content, as well as its Trademarks.

15. The Resale Policy limits Resellers' use of the Trademarks to avoid brand dilution, tarnishment, and confusion as to the origin of the Products.

16. The Resale Policy only permits sales of the Products to retail consumers and expressly prohibits sales to customers that intend to resell the Products, such as Defendant.

17. The Resale Policy also specifies that any warranties associated with the Products are only valid when sold by Resellers and are void if sold by resellers such as Defendant.

18. Amazon's Marketplace Items Condition Guidelines

(https://www.amazon.com/gp/help/customer/display.html?nodeId=201889720) require that any product that is listed as "New" come with the "Original manufacturer's warranty, if any."

19. Defendant lists the Products for sale as "New" despite the fact that such Products do not come with Plaintiff's warranty.

20. The Resale Policy requires the Reseller to abide by certain quality controls related to the packaging, storing and shipping of the Products.

21. The Resale Policy also requires that the Reseller provide a certain level of customer service to consumers and to cooperate with Plaintiff in the event of a recall of or safety concerns with the Products.

22. Further, Plaintiff provides Resellers with safety information related to the Products that is not readily available to the public.

23. Plaintiff has implemented these measures to preserve brand integrity, maintain the high quality of the Products, and ensure consumers are receiving genuine, defect-free products.

24. If Resellers fail to abide by these requirements, it poses risks to consumers and damages the goodwill and reputation of Plaintiff.

25. Unauthorized resellers, such as Defendant, do not always abide by these quality controls and customer service requirements, and Plaintiff has no way to verify and ensure that unauthorized resellers abide by these quality controls and customer service requirements.

### *The Growth of E-Commerce*

26. The explosion of e-commerce websites, particularly Amazon, has created problems for manufacturers in terms of ensuring that products being sold are genuine, defect free products.

27. In this e-commerce age, unauthorized resellers can obtain a manufacturer's products from a variety of sources and sell them anonymously online.

28. Many times these products may be materially different in that they are

damaged, expired, or of an inferior quality. However, given the nature of e-commerce sales, consumers unknowingly purchase these products believing them to be genuine.

29. Indeed, on Amazon.com, all sales of a particular product are sold under one Amazon Standard Identification Number (ASIN), so consumers have no way of knowing whether a product is coming from an authorized reseller offering genuine products or from an unauthorized reseller offering an inferior version of such products.

30. Because these resellers are able to sell without disclosing their identity, manufacturers are unable to communicate with them about that manufacturer's resale policies, such as Plaintiff's quality controls and customer service requirements.

31. As set forth in detail below, undersigned counsel has attempted to contact Defendant on numerous occasions, but Defendant has never responded and continues to sell the products.

32. This is precisely the problem that e-commerce websites create; anonymous third parties sell products that may be inferior or defective, the manufacturer cannot reach these unidentified third parties, and consumers are ultimately harmed when they receive non-genuine products.

### ***Defendant Begins Selling the Products Without Authorization***

33. At least since November, 2018, Plaintiff has been aware, and has so notified Defendant, that Defendant was selling the Products bearing the Trademarks without authorization and without Plaintiff's consent.

34. Plaintiff and Defendant's counsel exchanged correspondence in late 2018 early 2019, related to Defendant's unauthorized sale of the Products; however, Defendant continued to sell the Products.

35. Defendant sells the Products online on Amazon.com and possibly other websites.

36. Because Defendant is an unauthorized reseller of the Products, Plaintiff cannot verify that Defendant abides by Plaintiff's quality controls or its customer

service requirements.

37. Upon information and belief, Defendant does not abide by Plaintiff's quality controls nor does Defendant offer the same level of customer service as Resellers.

38. Because Defendant is not authorized to sell the Products, the Products sold by Defendant do not come with Plaintiff's consumer warranty for the Products.

39. Nevertheless, Plaintiff lists the Products as "New" despite the fact that Amazon's Marketplace Items Condition Guidelines require any "New" product to come with an applicable warranty.

40. As a result, the Products sold by Defendant are non-genuine Products, and such Products are inferior to Products sold by Resellers, as they do not come with a warranty or the same suite of services as Products sold by Resellers. Additionally, Products sold by Defendant may not be handled with the same quality controls as Products sold by Resellers, which may result in a defective Product.

41. By selling non-genuine and inferior Products, Defendant is harming consumers and is infringing on Plaintiff's rights in and to the Trademarks. The sale of non-genuine and inferior Products has tarnished and diluted the goodwill and distinctive quality of the Trademarks.

### *Plaintiff Demands Defendant Cease Selling the Products*

42. On February 3, 2020, Plaintiff sent a letter to Defendant's counsel informing Defendant that it was, *inter alia*, selling the Products without authorization and that such sales violated Plaintiff's rights in and to the Trademarks (the "**First Letter**"). The First Letter is attached as Exhibit B.

43. The First Letter requested that Defendant immediately cease such conduct; however, Defendant never responded and continued to sell the Products following receipt of the First Letter.

44. On February 19, 2020, undersigned counsel sent a second letter (the "**Second Letter**"), again informing Defendant that its sales were unauthorized and in

violation of Plaintiff's intellectual property rights. The Second Letter is attached as Exhibit C.

45. The Second Letter informed Defendant that its continued sale of Products now amounted to willful trademark infringement.

46. Plaintiff again demanded that Defendant immediately cease selling the Products.

47. Defendant never responded, but briefly took down its listing, in what was presumed an acknowledgment of the validity of Plaintiff's claims.

48. However, Defendant began selling again, so on March 20, 2020, Plaintiff sent a third demand letter (the "**Third Letter**") to Defendant demanding that it cease selling the Products and informing Defendant that its conduct violated Plaintiff's intellectual property rights. The Third Letter is attached as Exhibit D.

49. Defendant never responded and continued to sell the Products.

50. Plaintiff sent Defendant a fourth letter on April 14, 2020 to cease selling the Products (the "**Fourth Letter**"), but Defendant never responded and continues to sell the Products. This Fourth Letter is attached as Exhibit E.

51. Defendant's counsel responded on May 18, 2020, indicating that Morning Beauty would agree to settle this dispute. However, the settlement discussions ceased, and Defendant's counsel is no longer responding to Plaintiff's correspondence.

52. As of the date of this filing, Defendant continues to sell the Products in violation of Plaintiff's proprietary rights.



Screenshot from https://www.amazon.com/s?k=josie+maran&me=A2ABHQFAUQZJCJ&ref=nb_sb_noss taken on June 4, 2020.

## First Claim for Relief

## Trademark Infringement

## (15 U.S.C. §§ 1114 and 1125(a)(1)(A))

53.  Plaintiff hereby incorporates each and every preceding paragraph as if fully restated herein.

54.  Plaintiff is the owner of the Trademarks.

55.  The Trademarks are valid and subsisting marks, in full force and effect, and registered with the United States Patent and Trademark Office.

56.  Defendant uses the Trademarks in connection with its sale of the Products without Plaintiff's authorization or consent.

57.  The Products sold by Defendant bearing the Trademarks do not come with Plaintiff's consumer warranty. *See* Ex. A.

58.  Plaintiff requires that all its resellers abide by certain quality controls with respect to the storage, handling, and shipping of the Products. *Id.*

59.  Plaintiff requires that all resellers provide a level of customer service to all consumers of the Products. *Id.*

60.  Upon information and belief, Defendant does not abide by these quality controls and does not offer the requisite level of customer service.

1851375

61. Because Defendant does not abide by these quality controls or provide the necessary customer service, and because the Products sold by Defendant do not have a consumer warranty, these Products are not genuine and are materially different from Products sold by Plaintiff or Resellers.

62. Defendant's unauthorized sale of the Products bearing the Trademarks has infringed on and damages the value of the Trademarks.

63. Defendant's use of the Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the Products sold by Defendant come with Plaintiff's consumer warranty and have been handled in accordance with Plaintiff's quality controls when, in fact, they do not.

64. Confusion is more likely given that Defendant lists the Products as "New" despite it being a violation of Amazon's Marketplace Items Condition Guidelines to list an item as "New" when it does not come with the manufacturer's warranty as is the case with Defendant's sale of the Products.

65. Defendant's use of the Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the Products are sponsored by or authorized for sale by Plaintiff, when, in fact, they are not.

66. Defendant informed Plaintiff that its sales of the Products infringed on Plaintiff's rights in the Trademarks.

67. As a direct and proximate result of Defendant's continued sale of the Products bearing the Trademarks, Plaintiff has suffered and continues to suffer immediate and irreparable harm, including harm to the reputation and goodwill of its business and loss of profits in an amount to be proven at trial.

68. Plaintiff is entitled to recover damages from Defendant's infringement and disgorge any profits from their infringing sales of the Products.

69. Plaintiff is further entitled to injunctive relief pursuant to 15 U.S.C. §1116 and increased damages pursuant to 15 U.S.C § 1117(a) because Defendant's infringement of the Trademarks is willful.

## Second Claim for Relief

## Unfair Competition

## 15 U.S.C. §1125(a)

70. Plaintiff hereby incorporates each and every preceding paragraph as if fully restated herein.

71. Plaintiff is the owner of the Trademarks.

72. The Trademarks are valid and subsisting marks, in full force and effect, and registered with the United States Patent and Trademark Office.

73. Defendant uses the Trademarks in connection with its sale of the Products without Plaintiff's authorization or consent.

74. The Products sold by Defendant are materially different than genuine Products sold by Plaintiff because Defendant's Products do not come with Plaintiff's consumer warranty, and upon information and belief, Defendant does not abide by Plaintiff's quality controls or offer the necessary level of customer service to consumers.

75. Defendant's use of the Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the Products sold by Defendant come with Plaintiff's consumer warranty and have been handled in accordance with Plaintiff's quality controls when, in fact, they do not.

76. Confusion is more likely given that Defendant lists the Products as "New" despite it being a violation of Amazon's Marketplace Items Condition Guidelines to list an item as "New" when it does not come with the manufacturer's warranty as is the case with Defendant's sale of the Products.

77. Defendant's use of the Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the Products are sponsored by or authorized for sale by Plaintiff, when, in fact, they are not.

78. Defendant's unauthorized sale of the Products bearing the Trademarks has infringed on and damages the value of the Trademarks.

79. Defendant informed Plaintiff that its sales of the Products infringed on Plaintiff's rights in the Trademarks.

80. As a direct and proximate result of Defendant's continued sale of the Products bearing the Trademarks, Plaintiff has suffered and continues to suffer immediate and irreparable harm, including harm to the reputation and goodwill of its business and loss of profits in an amount to be proven at trial.

81. Plaintiff is entitled to recover damages from Defendant's infringement of the Trademarks and disgorge any profits from their infringing sales of the Products.

82. Plaintiff is further entitled to injunctive relief pursuant to 15 U.S.C. §1116 and increased damages pursuant to 15 U.S.C § 1117(a) because Defendant's infringement of the Trademarks is willful.

## Third Claim for Relief

## Trademark Dilution (15 U.S.C. § 1125(c))

83. Plaintiff hereby incorporates each and every preceding paragraph as if fully restated herein.

84. Plaintiff is the owner of the Trademarks.

85. The Trademarks are valid and subsisting marks, in full force and effect, and registered with the United States Patent and Trademark Office.

86. Plaintiff has continuously used the Trademarks in commerce and has spent considerable sums in time and money to promote and advertise its Products using the Trademarks.

87. Plaintiff sells the Products bearing the Trademarks throughout the United States.

88. Consumers have come to associate the Trademarks with Plaintiff and the Products.

89. Consumers associate the Trademarks with high quality cosmetics.

90. Defendant is using the Trademarks in connection with the sale of the Products.

91. However, the Products sold by Defendant are materially different than genuine Products sold by Plaintiff because Defendant's Products do not come with Plaintiff's consumer warranty, and upon information and belief, Defendant does not abide by Plaintiff's quality controls, and Defendant does not offer the necessary level of customer service to consumers.

92. Because Defendant is selling an inferior product, Defendant's use of the Trademarks is causing the dilution of the Trademarks by blurring and tarnishing the reputation and goodwill associated with the Trademarks in violation of 15 U.S.C. § 1125(c).

93. As a direct and proximate result of Defendant's continued sale of the Products bearing the Trademarks, Plaintiff has suffered and continues to suffer immediate and irreparable harm, including harm to the reputation and goodwill of its business and loss of profits in an amount to be proven at trial.

94. Plaintiff is entitled to recover damages from Defendant's infringement of the Trademarks, and disgorge any profits from their infringing sales of the Products.

95. Plaintiff is further entitled to injunctive relief pursuant to 15 U.S.C. §1116 and increased damages pursuant to 15 U.S.C § 1117(a) because Defendant's infringement of the Trademarks is willful.

## Fourth Claim for Relief
## Violation of §§ 17200 et seq.

96. Plaintiff hereby incorporates each and every preceding paragraph as if fully restated herein.

97. Defendant has knowingly sold and advertised the Products using the Trademarks, without Plaintiff's authorization or consent.

98. The Products sold by Defendant are materially different than genuine Products sold by Plaintiff because Defendant's Products do not come with Plaintiff's consumer warranty, and upon information and belief, Defendant does not abide by Plaintiff's quality controls, and Defendant does not offer the necessary level of

customer service to consumers.

99. As a result, Defendant is misrepresenting to consumers the Products that it is selling.

100. Defendant's use of the Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the Products sold by Defendant come with Plaintiff's consumer warranty and have been handled in accordance with Plaintiff's quality controls when, in fact, they do not.

101. Defendant's use of the Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the Products are sponsored by or authorized for sale by Plaintiff, when, in fact, they are not.

102. Defendant's conduct is unfair, unlawful, deceptive, and/or fraudulent and violates Cal. Bus. & Prof. Code §§ 17200 et seq.

103. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer immediate and irreparable harms, including harm to the reputation and goodwill of its business and loss of profits in an amount to be proven at trial.

104. Plaintiffs are entitled to an injunction under Cal. Bus. & Prof. Code § 17203.

### Fifth Claim for Relief

### Declaratory Judgment / Injunctive Relief

105. Plaintiff hereby incorporates each and every preceding paragraph as if fully restated herein.

106. An actual and justiciable controversy exists between Plaintiff and Defendant related to whether Defendant has the right to sell the Products without Plaintiff's consent, and in violation of Plaintiff's rights in the Trademarks.

107. The Court, pursuant to Cal. Code of Civ. P. §1060, Cal. Bus. & Prof. Code §17203 and §14250, 28 U.S.C. §2201, and Fed. R. Civ. P. 57, should declare that Defendant has no right or authorization to sell the Products or use the

Trademarks, as these actions have harmed and continue to harm Plaintiff in an amount to be determined at trial.

108. The Court should further declare that the demand letters gave Defendant actual notice that it was not authorized to use the Trademarks, and that Defendant's continued use willfully violates Plaintiff's rights in the Trademarks.

109. Additionally, the Court should enjoin Defendant from any further sales of the Products or use of the Trademarks.

## Sixth Claim for Relief

## Violation of § 14245

110. Plaintiff hereby incorporates each and every preceding paragraph as if fully restated herein.

111. Plaintiff is the owner of the California Trademark.

112. Defendant uses the California Trademark and the Trademarks in connection with its sale of the Products without Plaintiff's authorization or consent.

113. Defendant's use of the California Trademark and the Trademarks is likely to cause confusion, cause mistake, or deceive consumers as to the source or origin of the Products.

114. Defendant's unauthorized use of the California Trademark in commerce constitutes trademark infringement in violation of Cal. Bus. & Prof. Code §14245.

115. As a direct and proximate result of Defendant's continued sale of the Products bearing the California Trademark, Plaintiff has suffered and continues to suffer immediate and irreparable harm, including harm to the reputation and goodwill of its business and loss of profits in an amount to be proven at trial.

116. Plaintiff is also entitled to the remedies set forth in Cal. Bus. & Prof. Code §14250.

## Seventh Claim for Relief

## Violation of § 14247

117. Plaintiff hereby incorporates each and every preceding paragraph as if

1851375

fully restated herein.

118.   Plaintiff is the owner of the California Trademark

119.   Plaintiff has continuously used the California Trademark in commerce and has spent considerable sums in time and money to promote and advertise its Products using the Trademarks and the California Trademark.

120.   Plaintiff sells the Products bearing the Trademarks and the California Trademark throughout the United States.

121.   Consumers have come to associate the California Trademark and the Trademarks with Plaintiff and the Products, and the Trademarks and the California Trademark have become well known and distinctive.

122.   Consumers associate the Trademarks and the California Trademark with high quality cosmetics.

123.   Defendant is using the Trademarks and the California Trademark in connection with the sale of the Products, in violation of Cal. Bus. & Prof. Code §14247.

124.   As a direct and proximate result of Defendant's continued sale of the Products bearing the California Trademark, Plaintiff has suffered and continues to suffer immediate and irreparable harm, including harm to the reputation and goodwill of its business and loss of profits in an amount to be proven at trial.

125.   Plaintiff is entitled to injunctive relief.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment as follows:

A.   As to the First Claim for Relief, award compensatory damages in an amount to be determined at trial, as well as attorney fees and costs, disgorge Defendant of its profits from all unauthorized sales of the Products, and permanently enjoin Defendant from using the Trademarks or selling or offering for sale the Products;

B.   As to the Second Claim for Relief, award compensatory damages in an

amount to be determined at trial, as well as attorney fees and costs, disgorge Defendant of its profits from all unauthorized sales of the Products, and permanently enjoin Defendant from using the Trademarks or selling or offering for sale the Products;

  C. As to the Third Claim for Relief, award compensatory damages in an amount to be determined at trial, as well as attorney fees and costs, disgorge Defendant of its profits from all unauthorized sales of the Products, and permanently enjoin Defendant from using the Trademarks or selling or offering for sale the Products;

  D. As to the Fourth Claim for Relief, permanently enjoin Defendant from using the Trademarks or selling or offering for sale the Products, as well as any other damages to be awarded as trial;

  E. As to the Fifth Claim for Relief, a declaratory judgment declaring that Defendant is unauthorized to sell the Products and is willfully violating Plaintiff's rights in the Trademarks, and permanently enjoin Defendant from any further sales of the Products;

  F. As to the Sixth Claim for Relief, permanently enjoin Defendant from using the Trademarks or selling or offering for sale the Products, any statutory damages, as well as any other damages to be awarded as trial; and

  G. As to the Seventh Claim for Relief, permanently enjoin Defendant from using the Trademarks or selling or offering for sale the Products, as well as any other damages to be awarded as trial.

| | | |
|---|---|---|
| 1 | DATED: June 7, 2020 | Respectfully submitted, |
| 2 | | |
| 3 | | GLASER WEIL FINK HOWARD |
| 4 | |   AVCHEN & SHAPIRO LLP |
| 5 | | |
| 6 | | By: */s/ Thomas P. Burke Jr.* |
| | | LAWRENCE M. HADLEY |
| 7 | | THOMAS P. BURKE JR. |
| 8 | | |
| | | KORHMAN JACKSON & KRANTZ LLP |
| 9 | | ALEX E. JONES |
| 10 | |   Attorneys for Plaintiff |
| | |   Josie Maran Cosmetics, LLC |

1851375

## **JURY DEMAND**

Plaintiff respectfully demands a trial by jury pursuant to Fed. R. Civ. P. 38.

          */s/ Thomas P. Burke Jr.*
          THOMAS P. BURKE JR.